**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | | |
|---|---|---|
| TERRY S. KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.: 9:05-1774-PMD-RSC |
| v. | ) | |
| | ) | |
| MARRIOTT INTERNATIONAL, | ) | **ORDER** |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

On June 21, 2005, Plaintiff Terry S. King ("Plaintiff" or "King") filed his complaint against

Defendant Marriott International, Inc. ("Defendant" or "Marriott"), asserting a claim for retaliation

under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, as well as state law

causes of action for breach of contract, breach of implied covenant of good faith and fair dealing,

and breach of contract accompanied by a fraudulent act.  Defendant filed a motion for summary

judgment pursuant to Fed. R. Civ. P. 56 on May 16, 2006.  The record includes a Report and

Recommendation ("R&R") of United States Magistrate Judge Robert S. Carr, which was made in

accordance with 28 U.S.C. § 636 (b)(1)(B).  The Magistrate Judge recommends that Defendant's

motion for summary judgment regarding Plaintiff's ADEA claim be granted, and that Plaintiff's

state law claims be dismissed without prejudice.  A party may object, in writing, to a R&R within

ten days after being served with a copy of that report.  28 U.S.C. § 636 (b)(1).  Plaintiff has filed

timely objections to the R&R.

**BACKGROUND**

The facts of this case, as supported by the record and considered in the light most favorable

1

to Plaintiff, are set forth in detail in the R&R.  The facts relevant to the discussion herein are set forth as follows:

In early 1987, King went to work for Marriott as an engineer; he was transferred to Washington D.C. in 1989 as a Divisional Director of Engineering.  In 1997 he was made Regional Engineering Manager (REM) for the Mid-Atlantic Region, one of six Marriott regions.  All regions had one REM except the Mid-Atlantic Region which had two: King and Arlie Kisner.  King's direct supervisor was Bob Jones, the Regional Vice President for Engineering, who in turn reported to a Regional Senior V.P. of Operations, who reported to Lenny Jachimowicz, the Vice President of Lodging Engineering.

On May 9, 2002, King applied for a position as Director of Facilities at a Marriott hotel scheduled to open on St. Kitts.  King's girlfriend, Peg Kinnally, also applied for that position.  Neither King nor Kinnally got the job.  On July 26, 2002, King complained to Vicki Stille, a human resource representative, that he and Kinnally were not hired despite being extremely qualified.  King asked Stille about the procedures for making a complaint under Marriott's Guarantee of Fair Treatment (GFT) policy.  Fifteen minutes after this call, Bob Jones called King and asked King why he thought of making a GFT complaint.  Jones told King that if he filed a GFT complaint, King's career at Marriott would be in jeopardy.  (King depo. 68-72, 181-182.)

The St. Kitts position came open again and on January 15, 2003, King posted for it, but again unsuccessful.  In February 2003, King made three telephone calls to the GFT hotline and each time left a message.  He did not ever actually make a GFT complaint and there is no evidence anyone at Marriott knew King made the calls.  (King depo. 68, 69,80, 81.)  Again, on March 21, 2003, King posted for a Director of Services position at the St. Kitts Marriott; King was told he was

2

not qualified.

On July 13, 2003, King brought an EEOC charge alleging age discrimination in the decision not to hire him in St. Kitts, retaliation for his trying to report sexual harassment by King's supervisor Jones on the GFT hotline, and retaliation for Kinnally's EEOC age complaint about St. Kitts. This EEOC charge is the protected activity for which King complains he was subjected to illegal retaliation. According to King, "Marriott" became aware of the EEOC charge on July 30, 2003. King alleges that (1) the decision to eliminate his job and (2) the failure to hire him for numerous jobs thereafter were in retaliation for his having filed the EEOC charge.

### Elimination of Plaintiff's Job

A decision to eliminate the REM positions, including King's REM position, was made in 2002 by Clare Kevill, a project assistant in the engineering department. Kevill's decision was approved and she began working with corporate human resources in creating a new job specification and working out the logistics of a reorganization that same year, well prior to King's protected activity.

### Failure to Hire Plaintiff for the RDE Position in the Mid-Atlantic Region

On October 14, 2003, King and Kisner were informed there was going to be a re-organization within the engineering discipline at Marriott; that all REM positions, including theirs, were being upgraded and changed to Regional Director of Engineering positions (RDE); that there would be only one RDE in the Mid-Atlantic Region; that both King and Kisner would therefore lose their REM positions and could each apply for the RDE position in the Mid-Atlantic Region and the RDE positions in the other five regions. Once these RDE positions were posted on Marriott's internal website, King instructed Vicki Stille, a VP of HR for the Mid-Atlantic Region, to post his

3

application for all of these positions.

The panel of decisionmakers for hiring the RDE position for the Mid-Atlantic Region was Bob Jones, Vicki Stille, and Victor Crawford (a VP of CRST for this region).  Of these three, Vicki Stille admitted to being aware of King's EEOC charge.  There is no evidence that either Jones or Crawford knew that King had filed an EEOC charge.

A total of seven people applied for the Mid-Atlantic Region RDE position.  First, Jones narrowed the candidate pool to four: Kisner, King, Randy Gaines, and Bill Thomas.  Jones rated King and Gaines "medium" and Kisner and Thomas as "high."  These ratings were consistent with these employees' last several performance reviews where Kisner and Thomas consistently received the highest ratings, and King was considered a step lower.  King, Gaines, Kisner, and Thomas all took an on-line Divine Inventory Survey and their answers were evaluated by an HR employee who was not aware of who the candidates were, other than their names.  Based on the results of this survey, the neutral employee graded Gaines and Thomas as the more suitable candidates for the RDE position; King and Kisner scored considerably lower.

Stille contacted each of the four candidates to schedule interviews with the panel of decisionmakers.  The other three candidates chose dates in November for their interviews; King was offered date in November and December, and chose to be interviewed December 12, 2003.  The other three candidates interviewed in person before the panel.  King was scheduled to interview in person, but cancelled the in-person interview at the last moment due to an illness.  King asked for and received the opportunity to have a phone interview with the panel.

Following the phone interview, the decisionmakers thought King was unimpressive and failed to articulate any examples of strategic thinking, a trait all three decisionmakers understood

to be essential for the new position.  The decisionmakers concurred that the top two candidates for the RDE position were Thomas and Gaines.  King was considered the least suitable candidate.  In the end, Thomas was selected.

**Failure to Hire Plaintiff for Other Marriott Jobs**

In addition to the RDE position for the Mid-Atlantic Region, King applied for the other RDE positions in the Midwest, Northeast, Southeast, South Central, and Western Regions.  In each region, he was competing with other REMs who were losing their position, as well as other internal and external candidates.  Lenny Jachimowicz, who was aware of King's EEOC charge, was one of five decisionmakers for the selection process in the South Central Region.  None of the decisionmakers for the RDE positions in the other regions were aware of King's EEOC charge.  King was not hired for any of these positions.

King also posted for the following Director of Engineering positions at full service hotels: (1) Marriott Miami Biscayne Bay, (2) Marriott Miami South Beach, (3) Marriott Tampa Renaissance, (4) Marriott Curacao, (5) Marriott Jamaica Renaissance, (6) Ritz Carlton Key Biscayne, (7) Ritz Carlton Grand Cayman, and (8) Ritz Carlton Coconut Grove.  For all of these positions, multiple decisionmakers selected the candidates.  Plaintiff presents no evidence that any of the decisionmakers for these positions were aware that King had filed an EEOC charge or that any decisionmakers had discussions with individuals who did have knowledge of his charge.

**<u>ANALYSIS</u>**

**I.     Magistrate Judge's Report**

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the

5

court. *Mathews v. Weber*, 423 U.S. 261, 269 (1976).  The court reviews *de novo* those portions of the R&R to which a specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions.  28 U.S.C. § 636(b)(1)(C).

After a review of the entire record, the R&R, and Plaintiff's objections, the court finds that the Magistrate Judge fairly and accurately summarized the facts in this case and incorporates the R&R's recitation of the facts by specific reference.  However, the court finds that the R&R misapplied some principles of law.  Accordingly, as described below, the court adopts the Magistrate Judge's R&R in part and rejects it in part.  The court also recommits a portion of this matter to the Magistrate Judge for further consideration.

## II.    Legal Standard For Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  The judge is not to weigh the evidence but rather to determine if there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  All evidence should be viewed in the light most favorable to the non-moving party.  *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate."  *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## III.    Age Discrimination in Employment Act ("ADEA")

As the R&R correctly summarizes, to resist summary judgment on an ADEA retaliation claim, a plaintiff may rely on direct evidence of discriminatory intent as in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989), or indirect evidence through the burden shifting proof scheme of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). If there is no direct evidence of age discrimination, the plaintiff must bear the burden of showing, by a preponderance of the evidence, a *McDonnell-Douglas* prima facie case of retaliation. In order to do so, he must show (1) that he engaged in a protected activity, such as filing an EEO claim, (2) that he suffered a materially adverse action, that is, an action which well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination," and (3) that there is a causal connection between the protected activity and the materially adverse action. *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (June 22, 2006); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant employer to rebut the presumption of retaliation by articulating non-retaliatory reasons for its actions. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089 (1981). If the employer meets its

burden of production, the presumption of retaliation drops from the case, and the plaintiff bears the ultimate burden of proving that the employer's stated reasons for the adverse action were a pretext for retaliation. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097 (2000).

## **DISCUSSION**

In the R&R, the Magistrate Judge first found that because the decision to eliminate the REM positions, including King's REM position, was made in 2002 *prior* to King's EEOC charge, this adverse employment action could not be the basis of an ADEA retaliation claim. (R&R at 20.) Plaintiff does not object to this recommendation.

As for Plaintiff's claim that Marriott retaliated against him by failing to hire him for the RDE positions or any other Marriott position, the Magistrate Judge found (1) Plaintiff presented no admissible direct evidence of retaliation and (2) Plaintiff failed to establish a causal connection between the protected conduct and the adverse activities, and therefore the third element of the *McDonnell-Douglas* prima facie case of retaliation has not been met. Accordingly, the Magistrate Judge recommended that Defendant's motion for summary judgment be granted as to Plaintiff's ADEA retaliation claims. The Magistrate Judge further recommended that, because the federal ADEA claim should be dismissed, (3) the state law causes of action should also be dismissed without prejudice to be pursued in state court.

Plaintiff objects to all of these recommendations as follows:

**(1)     Did the Magistrate Judge err in excluding Plaintiff's direct evidence of retaliation?**

As direct evidence of Marriott's retaliatory motive in failing to hire King, Plaintiff submitted

his affidavit and the affidavit of Peg Kinnally in which they both aver the following:

> (A) On January 12, 2004, Kisner telephoned King and told King he had cocktails with Bob Jones in late 2003 before the decision was made on the RDE job for the Mid-Atlantic Region and Jones said there was no way King was getting the RDE job because of the EEOC complaints King had filed.  Peg Kinnally was also on the telephone and heard Kisner make this statement.

> (B) On June 2, 2004, Kisner told King and Peg Kinnally that Jachimowocz told him (Kisner) that King was "off his rocker" and that if King had not filed that complaint against Marriott they would have found him a soft landing, that is, another job after the reorganization.

The Magistrate Judge found that these portions of Plaintiff and Peg Kinnally's affidavits contained multiple-level hearsay not subject to any exception, and that these affidavits were inadmissible to support Plaintiff's claim.  (R&R at 18.)  Because this direct evidence of retaliation could not be considered, the Magistrate Judge found that Plaintiff's retaliation claim could only survive summary judgment if it satisfied the burden shifting scheme under *McDonnell-Douglas*.  (Id.)

In objections numbered 1 and 2, Plaintiff objects that the Magistrate Judge erred in excluding these portions of King's and Peg Kinnally's affidavits.  Plaintiff asserts that several hearsay exceptions apply, such that the evidence within these affidavits is admissible.  The court considers whether the Magistrate Judge erred in excluding these affidavits.

Generally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court.  Federal Rule of Civil Procedure 56(e) specifically requires that affidavits submitted on summary judgment contain admissible evidence and be based on personal knowledge.  *See also Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir. 1991) (evidence submitted in opposition to summary judgment motion must be admissible and based on personal knowledge).  Thus, summary judgment affidavits cannot be conclusory or based upon hearsay.  *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 962 (4th

Cir. 1996) (citing *Maryland Highways Contractors Ass'n v. Maryland,* 933 F.2d 1246, 1252 (4th

Cir.), *cert. denied,* 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 325 (1991)).

        Under Federal Rule of Evidence 805, hearsay within hearsay is only admissible if each part

of the combined statement conforms with an exception to the hearsay rules.  The first level of

hearsay in each statement - Jones' statement to Kisner and Jachimowicz's statement to Kisner - are

admissions of a party opponent and are thus excluded from the definition of hearsay under Federal

Rule of Evidence 801(d)(2)(D).  The statements from Kisner to King/Kinnally, however, clearly

qualify as hearsay and no exception applies to make these statements admissible.  Kisner did not

make his statements to King/Kinnally regarding a matter "within the scope of his agency;" his

statements therefore are not an admission by a party opponent.  Further, Kisner's statements have

no independent legally operative effect,[1] and have no circumstantial guarantees of trustworthiness.

Clearly, these out-of-court statements are offered to show that Jachimowicz and Jones were

motivated by retaliatory intent in failing to hire King and are therefore squarely within the definition

of hearsay.

        For these reasons, the Magistrate Judge did not err in striking the portions of King's and

Kinnally's affidavits recounting Kisner's statements.  Such evidence is rank hearsay and may not

be considered in ruling upon a motion for summary judgment.  Because these inadmissible affidavits

---

        [1] Plaintiff asserts that these statements may be admitted to show that Jones and Jachimowicz had *notice* of King's EEOC charge.  While Jones and Jachimowicz's statements to Kisner could be admissible under this rationale, Kisner's statements to King/Kinnally have no such independent significance and are inadmissible hearsay.  Similarly, if these statements had been made to King to threaten or intimidate him, they could be offered to show that a reasonable worker would have been dissuaded from making the EEOC charge by his employer's conduct.  However, Kisner allegedly made these statements several weeks or months after King's employment with Marriott had already been legitimately terminated, and King had already been denied other employment.  As such, the statements could have no legally operative effect on King at that time.

were the only direct evidence of retaliation offered by Plaintiff, the Magistrate Judge did not err in

requiring Plaintiff to establish a *McDonnell-Douglas* prima facie case of retaliation.

**(2)    Did the Magistrate Judge err in finding Plaintiff failed to present a *McDonnel-Douglass* prima facie case of retaliation?**

In the case *sub judice*, the parties do not contest that Plaintiff's July 13, 2003 filing of an

EEOC charge is a "protected activity" and Marriott's failure to hire Plaintiff for the many positions

for which he posted constitutes an "adverse action" sufficient to sustain a retaliation claim.  To

prove a prima facie case, therefore, Plaintiff must present evidence from which a reasonable

factfinder could conclude that a causal connection existed between the protected activity and the

adverse employment action.  To prove this connection, Plaintiff must first show that the relevant

officials at Marriott were aware of his filing the EEOC charge at the time the alleged retaliation

occurred.  *Baqir v. Principi,* 434 F.3d 733, 748 (4th Cir. 2006); *see Hooven-Lewis v. Caldera,* 249

F.3d 259, 273 (4th Cir. 2001) (recognizing that plaintiff's "informal contacts with the EEO and

informal complaints [would be] protected activities *if* the accused person or entity knew about them"

(emphasis added)); *Dowe v. Total Action Against Poverty,* 145 F.3d 653, 657 (4th Cir. 1998)

(holding that the "employer's knowledge that the plaintiff engaged in the protected activity is

absolutely necessary to establish the third element of the prima facie case").

In this case, regarding twelve of the fourteen Marriott positions for which King posted,

Plaintiff presented no evidence suggesting that *any* of the relevant decisionmakers for these positions

knew or could have known that King had filed an EEOC charge.  Therefore, the Magistrate Judge

suggested that a prima facie case had not been made and that the ADEA claim, to the extent it is

based on these allegedly adverse actions, should be dismissed.  Plaintiff does not object to this

11

recommendation; accordingly, the court adopts this recommendation in full.

However, Vicki Stille, one of the three decisionmakers in the hiring of the RDE for the Mid-Atlantic Region, and Lenny Jachimowicz, one of the five decisionmakers for the RDE position for the South Central Region, admitted to being aware of Plaintiff's EEOC charge. Plaintiff presented no direct evidence that the other decisionmakers for these positions were aware of Plaintiff's EEOC complaint.[2] Stille testified that she did not tell the other decisionmakers about the EEOC charge and that she was careful to ensure King got fair consideration. Also, no evidence suggests that Jachimowicz disclosed that fact or allowed that fact to influence him or others. On this evidence, the Magistrate Judge found that Plaintiff did not show that *all* the decisionmakers who denied Plaintiff the RDE positions were aware of Plaintiff's EEOC charge or that the one decisionmaker for each position who had knowledge of EEOC charge dominated the decisionmaking process so as to become the actual decisionmaker; therefore, he found that Plaintiff could not establish a causal connection between his protected activity and the retaliatory conduct. (R&R at 17, citing *Hill v. Lockheed Martin & Logistics Mgmt., Inc.*, 354 F.3d 277, 291 (4th Cir. 2004).)

The court finds, however, that holding Plaintiff's burden at the prima facie stage to such a high standard was error.[3] Direct evidence that all decisionmakers on a panel responsible for an

---

[2]Crawford was the highest ranking of the three decisionmakers and there is no evidence that Crawford knew anything about King's EEOC charge. (Jones depo. at 33, lns. 4-16; Stille depo. at 36 - 38.) The only evidence showing that Jones was aware of King's EEOC charge is the affidavits of King and Kinnally regarding their conversations with Kisner. As discussed above, this evidence is inadmissible multiple-level hearsay.

[3] *Hill v. Lockheed,* cited in the R&R, discusses the level of proof needed to *directly* prove discriminatory intent in a mixed-motive employment discrimination case. In such a case, a plaintiff must produce sufficient evidence that the racial (or other illegal) discrimination "must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Id.* (citing *Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775 (O'Connor,

12

adverse action were aware of the protected activity is not required to establish a causal connection necessary for a prima facie case of retaliation. *See Ford v. Gen. Elect. Lighting, LLC,* 121 Fed.App'x 1, *7, 2005 WL 32825, **5 (4th Cir. Jan. 7, 2005) (even without direct evidence of decisionmaker's knowledge of actual complaint, causal connection was established where supervisor knew of plaintiff's earlier informal complaints and adverse action occurred shortly after plaintiff made formal complaint).  Viewing the evidence in the light most favorable to Plaintiff, a reasonable factfinder could find that Stille and Jachimowicz's knowledge of the protected activity illegally influenced the decisionmaking process in the hiring of RDEs for both the Mid-Atlantic and the South Central Regions.  Further, while Stille testified that she did not inform the other decisionmakers of Plaintiff's EEOC charge, a reasonable factfinder could elect not to fully credit this testimony.  Under the standard appropriate for the prima facie case, direct evidence that one person on the panel of decisionmakers responsible for the adverse action knew Plaintiff had filed an EEOC charge is sufficient to show the employer's knowledge of the protected activity.

Under the relevant Fourth Circuit law, once the employer has notice of the protected activity, a causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity. *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir. 1989); *see Lettieri v. Equant Inc.,* – F.3d —, 2007 WL 641813, *9 (4th Cir. March 5, 2007) (holding that a plaintiff can prove a causal

---

J., concurring) (noting that "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden" of proving discrimination)).  Clearly, this standard of proof is much higher than the plaintiff's burden under the burden-shifting scheme of *McDonnell-Douglass.*  As such, the Magistrate Judge erred in applying the *Hill* standard in determining whether Plaintiff had established the causal connection required for a *McDonnell-Douglass* prima facie case of retaliation.

connection by either the temporal proximity between the protected activity and allegedly retaliatory conduct or by other evidence of retaliatory animus); *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1229 (4th Cir. 1998) (holding that little or no direct evidence of causal connection between plaintiff's protected activity and adverse employment action is required for plaintiff to survive summary judgment). In the failure-to-hire context, the Fourth Circuit "assume[d], without deciding, that, the employer's knowledge coupled with an adverse action taken at the first opportunity satisfies the causal connection element of the prima facie case." *Price,* 380 F.3d at 213 (*citing Williams v. The Nashville Network,* 132 F.3d 1123, 1132 (6th Cir.1997) (finding causal connection where secretary forwarded plaintiff's applications for further consideration prior to EEOC complaint, but did not forward subsequent applications)). Generally, however, the passage of time (five to six months in this case[4]) tends to negate the inference of discrimination. *See Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (holding that temporal proximity must be "very close" to infer causality at prima facie case) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient to prove causal connection); *Hughes v. Derwinski,* 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (4-month period insufficient)); *Dowe,* 145 F.3d at 657 (3-year lapse insufficient).

Though it is a very close question, the court concludes that King has established a prima facie case of discrimination because a reasonable trier of fact could conclude that Stille, Jachimowicz, and the other relevant decisionmakers for the RDE positions in the Mid-Atlantic and South Central Regions knew of the protected activity and these decisionmakers, at the first available

---

[4]Plaintiff made his EEOC charge on July 13, 2003. Marriott decided not to hire Plaintiff sometime after his phone interview in December of 2003.

opportunity, declined to hire King. "While this proof far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality." *Williams*, 871 F.2d at 457 (holding that causal connection exists for purposes of stating a prima facie case where employee was fired after her employer became aware of protected activity).

Because the Magistrate Judge erred in finding that Plaintiff did not make his prima facie case, the court must now consider whether Plaintiff has presented some evidence that the failure to hire King for the RDE positions for the Mid-Atlantic or South Central Region was in retaliation for his protected activity. As described in detail in the R&R, Marriott articulated several legitimate, nonretaliatory reasons for not hiring King for these positions. (R&R at 7 - 11) To avoid summary judgment, therefore, Plaintiff must also have forecast evidence sufficient to establish that he was the victim of retaliation ( *i.e.,* Marriott's nonretaliatory reasons were pretextual).

In *Reeves v. Sanderson Plumbing Products, Inc.,* the Supreme Court identified several factors appropriate to a consideration of pretext at the summary judgment stage: a strong prima facie case coupled with some probative evidence that the employer's explanation is false would counsel against granting the employer summary judgment unless the employer presented other strong evidence from which "no rational factfinder could conclude" there was retaliation. 530 U.S. 133, 148-49, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *see also Price*, 380 F.3d at 213-14 (4th Cir. 2004) (upholding summary judgment for employer where plaintiff offered weak prima facie case and inadequate showing of pretext on retaliation claim). Here, as discussed above, King has not forecast a particularly strong prima facie case of retaliation, presenting evidence that only one of the three to five decisionmakers in each instance knew about King's protected activity, and that five to six months elapsed between the protected activity and the adverse action. As such, in order to survive

summary judgment, King must present probative evidence that Marriott's explanations for failing to hire him for both the Mid-Atlantic and South Central RDE positions are false:

### RDE Position for the Mid-Atlantic Region

Marriott enumerated three principal non-retaliatory reasons for denying King the Mid-Atlantic RDE position ( *i.e.,* his lower performance ratings, his low scores on the Divine Inventory Survey, and his unimpressive phone interview).  Plaintiff offers no evidence showing that these reasons are false and/or pretextual.  Accordingly, summary judgment is appropriate as to Plaintiff's claim that Marriott's failure to hire him for the Mid-Atlantic RDE position constituted illegal retaliation.

### RDE Position for the South Central Region

Regarding the South Central Region RDE position, Marriott asserted that when the position initially became available, only two individuals, Kurt James and another individual, showed interest. Because James "interviewed well and appeared to have the right attributes for the position," Marriott claimed that its decisionmakers did not believe any of the candidates that posted late - including King - merited reopening the selection process.  (Def. Mot. for SJ at 26.)

King asserts that this explanation is clearly pretextual because he did not apply for this position late as claimed by Marriott.  In his objections, Plaintiff notes that "Stille confirmed to King in an email that she posted him for the position the day it came out."  (Objections at 12.)  King submitted an affidavit in which he testified that "he did not post late for the RDE job in the South Central Region," and to which he attached the emails he received from Stille confirming that he had been posted for the South Central Region RDE as soon as it became available.  (King affidavit, Exhibit 3.)  Considering that Plaintiff submits an affidavit and several written communications to

16

support his claim that Stille promptly posted him for the South Central RDE position, Plaintiff has presented "probative evidence that the employer's explanation is false."  Further, Marriott has not presented "other strong evidence from which no rational factfinder could conclude" there was retaliation.  As such, because Plaintiff establishes a prima facie case of retaliation and presents probative evidence that Marriott's stated legitimate reasons for the adverse action are false, Plaintiff's retaliation claim - to the extent it is based on the failure to hire King for the South Central Region RDE position - must survive summary judgment.

**(3)  Did the Magistrate Judge err in finding Plaintiff has not demonstrated an adverse employment action to the extent he claims he was entitled to a "soft landing" i.e., he contends that "Marriott always made sure that long-term engineering employees who worked at the regional level would have replacement jobs"?**

Plaintiff objects that Jachimowicz and Stille's "refusal to assist him in finding a soft landing - when everyone else in his discipline was given one" constitutes compelling evidence that King was being retaliated against.  (Objections at 8.)  More specifically, Plaintiff asserts the following instances of allegedly adverse action by Marriott: (1) At some point following King's last day of work on January 2, 2004, Jachimowicz recommended Kisner for a position at an MVCI property in Orlando, but did not recommend or contact King regarding this position.  (2) Stille deposed that, after receiving an inquiry from one of the decisionmakers for the REM job in the South Central Region regarding King's application, she "does not recall calling [the decisionmaker] back to assist King in getting the position."  (Objections at 11.)  (3) Jachimowicz admitted that in a conversation with a decisionmaker in February 2004, he did not say that he felt King should get the job with Renaissance (a hotel chain owned by Marriott), and he never told the decisionmaker that King would

17

do a good job in the Ritz Carlton Director of Engineering positions.  (4) Stille also admitted that she did not do anything further to assist King in getting the Renaissance job.  Plaintiff asserts that Jachimowicz and Stille's failure to recommend King or otherwise affirmatively help King get another position with Marriott following his termination is an adverse employment action for which a retaliation claim lies.  In support of this assertion, Plaintiff cites *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405 (June 22, 2006), which states that an "adverse action" for purposes of a retaliation claim is not limited to an employer's actions that affect terms, conditions or status of employment, or those that occur at the workplace; rather, the scope of the retaliation provision is broader than that of a substantive discrimination provision.  As such, an adverse employment action is any action by an employer that is objectively harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination.

Considering King's claims in light of *Burlington Northern,* the court first notes that while an "adverse action" is more broadly defined in a retaliation context than it is in a substantive discrimination context, it still does not encompass "petty slights, minor annoyances, and simple lack of good manners."  *Id.* at 2415.  Rather, the standard is an objective one requiring a plaintiff to show that the employer's conduct would be considered materially adverse by a reasonable worker.  Generally, an employer has no duty to an employee to transfer him to another position in the company when the employer reduces or restructures its workforce, and King does not allege that the terms of his employment imposed any such duties on Marriott in this case.  *See Norbuta v. Loctite Corp.*, 1 Fed.App'x 305 (6th Cir. 2001)**;** *see Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir. 1986).  The evidence before the court, considered in the light most favorable to Plaintiff, shows that Jachimowicz and Stille did not hinder or sabotage King's ability to apply for positions with Marriott;

18

they merely did not, in King's opinion, do all that they could to help him find another job.  A reasonable employee, however, would not have felt that his former employer had an obligation to do more than Marriott did.[5]  Jachimowicz and Stille's failure to affirmatively find and recommend new jobs to King cannot be considered an adverse employment action.  Indeed, were this not the case, former employers would be required to affirmatively assist all terminated employees in finding suitable employment, or face accusations of adverse action.  The purpose of the retaliation provision of the ADEA is not to turn former employers into employment placement agencies.

For these reasons, the court finds the Magistrate Judge did not err in finding that King has not demonstrated an adverse employment action to the extent he claims he was entitled to a "soft landing."  (R&R at 19, n 1.)  The failure to hire an employee for a position for which he applied is a recognizable adverse employment action; however, the failure to inform a former employee about posted available positions and affirmatively aid him in getting these jobs is not.  Therefore, the only relevant adverse employment actions alleged in this case were Marriott's failure to hire King for the fourteen positions to which he actually applied.  The Magistrate Judge properly considered only these adverse actions in determining whether Plaintiff presented sufficient evidence to survive summary judgment.

**(4)     Did the Magistrate Judge err in recommending the court to decline jurisdiction over Plaintiff's state law claims?**

The Magistrate Judge clearly erred in finding that the court could decline jurisdiction and dismiss Plaintiff's state law claims without prejudice.  A cursory review of Plaintiff's complaint

---

[5] It is uncontested that, following notice of his termination, Marriott coded King as a "1" for rehire purposes, which coded him as a rehire candidate.  Also, Stille helped King post for jobs as they became available.

reveals that the state law claims were originally and properly brought under 28 U.S.C. § 1332, which provides mandatory jurisdiction over state law causes of action in diversity cases when the amount in controversy exceeds $75,000.  It is uncontested that Plaintiff is a citizen of Florida, Defendant is incorporated in Delaware with its principle place of business in Maryland, and the amount in controversy in this case exceeds $75,000.  Accordingly, this federal court has mandatory jurisdiction over Plaintiff's state law claims, and the Magistrate Judge erred in failing to consider them.  For this reason, the court recommits this matter to the Magistrate Judge with instructions to consider Defendant's motion for summary judgment as it relates to Plaintiff's state law causes of action.

<u>**CONCLUSION**</u>

It is hereby **ORDERED**, for the foregoing reasons, that Defendant's Motion for Summary Judgment is granted in part, denied in part, and recommitted to the Magistrate Judge in part.

To the extent Plaintiff's ADEA retaliation claim is premised on Marriott's failure to hire Plaintiff for the RDE position for the South Central Region, summary judgment is **DENIED**. Regarding all other asserted bases for Plaintiff's ADEA retaliation claim, summary judgement is **GRANTED**.

It is further **ORDERED** that this matter is **RECOMMITTED** to the Magistrate Judge with instructions to consider Defendant's Motion for Summary Judgment as it relates to Plaintiff's state law claims.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge


**Charleston, South Carolina**
**March 27, 2007.**

21