RECEIVED
USDC CLERK, CHARLESTON, SC
2007 JUL 16  A 11: 20

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Terry S. King, ) | C.A. No. 9:05-1774-PMD-RSC |
| Plaintiff, ) | |
| -versus- ) | **REPORT AND RECOMMENDATION** |
| Marriott International, Inc., ) | |
| Defendant. ) | |

This employment discrimination action alleging violations of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et. seq. ("ADEA") and state law claims, is before the undersigned United States Magistrate Judge for a report and recommendation on the defendant's motion for summary judgment on the state law causes of action. 28 U.S.C. § 636(b).

On June 21, 2005, Plaintiff Terry S. King ("Plaintiff" or "King") filed his complaint against Defendant Marriott International, Inc. ("Defendant" or "Marriott"), asserting a claim for retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, as well as state law causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, and breach of contract accompanied by a fraudulent act. Defendant filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 on May 16, 2006.

## **SUMMARY JUDGMENT STANDARD**

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The court is not to weigh the evidence but rather to determine if there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the non-moving party. <u>Perini Corp. v. Perini Constr., Inc.</u>, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." <u>Teamsters Joint Council No. 83 v. Centra, Inc.</u>, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" <u>Hughes v. Bedsole</u>, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting <u>Pachaly v. City of Lynchburg,</u> 897 F.2d 723, 725 (4th Cir. 1990)). "The mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." Celotex, 477 U.S. at 327.

## FACTS

Terry King began his employment with Marriott in 1987 in Michigan when Marriott bought the motel chain for which King worked, Residents Inn Company. (King Dep. p. 7, lns. 10-15). In 1989, Marriott moved King to Bethesda, Maryland, where Marriott is headquartered. (King Dep. p. 7, lns. 10-14; see also King Dep. p. 9, lns. 6-12). From that point forward, King maintained an office in Maryland and he reported to individuals in Maryland. (King Dep. p. 7, ln. 25 through p. 8, ln. 5; p. 8, ln. 12 through p. 9, ln. 5).

At some time King received and signed an acknowledgment of an employment manual which manual he contends created the contract of employment upon which he sued. (King Dep. ex. 3; King Dep. p. 43, lns. 11-24). King cannot recall that he ever went through an orientation or whether he received the manual in Michigan or Maryland. However, the manual contains information on the Family Medical Leave Act of 1993, and he was reporting to Maryland in 1993. Therefore, it appears that the uncontested

evidence is that King received the critical employment manual which is the alleged contract upon which he is suing in Maryland.

On page 2 of the employment manual it states that Marriott is an "at will" employer; the pertinent language is, "Nothing in this manual shall be deemed to alter the 'at will' status of associates working at the company or create a contract of employment for any specific period of time." King signed the last page of the manual which is entitled "Statement of Understanding." By signing this page, King affirmed that he "read, understood, and agree[d] to adhere to the information contained in this booklet regarding the below referenced topics." The "below referenced topics" included the "Employer at Will" provision.

Marriott also indicated to King that he was an at will employee through a 1997 offer letter which contained the following language: "This offer letter is not a contract of employment. This letter constitutes the full commitments which have been extended to you." King read the letter accepted the offer and signed the letter. (King Dep. P. 13, lns. 5-15.)

**LAW**

Where the court's jurisdiction is premised on diversity of citizenship, as here, a federal court must apply and follow the conflict of law rules prevailing in the state in which it sits. <u>Klaxon Company v. Stentor Electric Manufacturing Co., Inc.</u>, 313

U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Therefore, the court is bound to follow South Carolina conflict of law rules. To this end, traditional common law choice of law rules are controlling in South Carolina. <u>Lister v. Nationsbank of Delaware, N.A., et al.</u>, 329 S.C. 133, 494 S.E.2d 449 (Ct. App. 1997). The parties agree that under traditional conflict of law principles, matters bearing upon the execution, interpretation, and validity of a contract are determined by <u>lex loci contractu</u>, the law of the place where the contract was made. <u>See</u>, <u>Livingston v. Atlantic Coast Line R. Co.</u>, 176 S.C. 385, 180 S.E. 343 (S.C. 1935). This principle has been repeated in South Carolina cases concerning the employer/employee relationship, whereby the location of the parties when the last act occurs to create the contract will determine whether the contract is valid and enforceable. <u>See</u>, <u>O'Bryant v. Daniel Construction Company</u>, 305 S.E.2d 241 (S.C. 1983). Matters bearing upon the performance of a contract are determined by the law of the place of performance. <u>Livingston</u>.

## **DISCUSSION**

A review of the record and relevant case law reveals that the defendant's motion directed toward the three breach of contract causes of action should be granted.

King was given and signed the employment manual which King claims is his contract in Maryland where King reported to his

5

supervisors and where King maintained an office. There is no evidence King was given the manual in Michigan, and language in the manual post dates King's 1989 move from Michigan to Maryland. Likewise there is no evidence King was given the manual in South Carolina. Therefore, the alleged contract was entered into, if at all, in Maryland and South Carolina courts would apply Maryland law to determine if the employment manual constituted a contract. Under Maryland law, "an employee handbook that states that it is not a contract cannot be construed as a contract." Jordan v. Alternative Resources Corp., 95 FEP Cases 1335 (D. Md. 2005)((citing Conkwright v. Westinghouse Elec. Corp., 739 F.Supp. 1006, 1020-21 (D.Md. 1990) ("Although the validity of implied employment contracts has been recognized, Maryland courts have refused to find employment contracts where ...an express disclaimer was included.") (citing Fournier v. United States Fid. & Guar. Co., 569 A.2d 1299 (Md. 1990) and Castiglione v. Johns Hopkins Hosp., 517 A.2d 786 (Md. Ct. Spec. App. 1986), cert. denied, 523 A.2d 1013 (1987)).

Since Maryland law controls and that law precludes finding a valid enforceable contract where, as here, the relied upon document contains express disclaimers of any contract, all of King's state law contract claims fail.

The undisputed evidence is that Marriott made it known to King that it was an "at-will" employer, that he was an "at-will"

employee, and that the manual and its contents did not create a contract of employment. Page 2 of the document which is claimed by King to create an implied contract of employment, contains the assertion that Marriott is an "at-will" employer and further provides, "Nothing in this manual shall be deemed to alter the "at will" status of associates working at the company or create a contract of employment for any specific period of time." Further, King signed the last page of the guide which is entitled "Statement of Understanding." By signing this page, King affirmed that he "read, understood, and agree[d] to adhere to the information contained in this booklet regarding ..." the "Employer at Will" provisions discussed earlier in the guide.

In addition King acknowledged his at will status when he read and signed Marriott's 1997 offer letter.

In short, the fact that King had no employment contract with Marriott is fatal to all of his breach of contract causes of action.

## CONCLUSION

Accordingly, since there exists no genuine material question of fact about whether King was an at will employee and had no employment contract with Marriott, the defendant is entitled to judgment as a matter of law. It is recommended that the

7

defendant's summary judgment motion be granted on the three state law breach of contract causes of action.

                                        Respectfully Submitted,

                                        Robert S. Carr
                                        United States Magistrate Judge

Charleston, South Carolina

July 16, 2007